**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FORTENBERRY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-11309** |
| **SCOTTSDALE INSURANCE CO, ET AL.** | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court are Plaintiffs' Dotty and Alvin Fortenberrys' ("Fortenberrys") Motions to Strike the Defendants' Answers and Counterclaims. R. Docs. 13, 30. Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"), has filed an Opposition. R. Doc. 17. Defendant United Services Automobile Association ("USAA") has adopted Liberty Mutual's arguments. R. Doc. 36. The Court has reviewed the extensive briefing on these issues and the applicable law and now issues this Order & Reasons.

### I.      BACKGROUND

This case involves an insurance coverage dispute for damages arising out of a car accident. On November 15, 2013, Plaintiffs Dotty and Alvin Fortenberry were injured when their vehicle was struck by a commercial delivery truck operated by David Scott in East Baton Rouge Parish, Louisiana. R. Doc. 13-1 at 2-3. Mr. Scott was operating the truck on behalf of either JYD Trucking ("JYD"), a Louisiana limited liability company, or B&R Hot Shot Logistics ("B&R").[1] Mr. Scott, the truck, and JYD were insured by a Scottsdale Insurance Company policy which provided

---

[1] It appears this issue is somewhat in dispute. Plaintiff asserts that Scott was operating the truck on behalf of B&R but the truck was not covered by the B&R policy, (R. Doc. 13-1 at 4), while Defendant Liberty Mutual indicates Scott was driving the truck on behalf of "JYD and/or B&R." R. Doc. 17 at 2.

$100,000 of liability coverage per injured person. B&R had a one million dollar liability policy with Western World Insurance Company ("Western World"). The Western World policy includes a MCS-90 endorsement, which assures compliance with federal minimum levels of responsibility for motor carriers. *See Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010)

At the time of the accident, Mr. Fortenberry was driving a 2013 Ford Fusion, provided by his employer, United Services Automobile Association ("USAA"). According to Plaintiffs', the Fusion and driver were insured by a under/uninsured motorist ("UM/UMI") Liberty Mutual policy which provided two million dollars of coverage. The Plaintiffs also had a personal UM/UMI policy with USAA providing $500,000 in coverage. R. Doc. 13-1 at 3. As a result of the accident, Mr. Fortenberry sustained serious injuries, which required extensive medical treatment. According to the Plaintiffs, Mr. Fortenberry is now permanently disabled.

On May 27, 2014, Plaintiffs filed suit in state court seeking damages against Scott, JYD Trucking, B&R, Scottsdale, and Western World. Western World denied coverage, as the vehicle involved in the accident was not listed on the policy. After exhausting the Scottsdale $100,000 policy limits, Plaintiffs then filed a claim for UM coverage under both the USAA and Liberty Mutual policies. R. Doc. 13-1 at 4. Liberty Mutual denied the claim, contending that the policy did not provide coverage because USAA, the policy holder, validly waived UM coverage. R. Doc. 9 at 11. USAA denied coverage, arguing that the Liberty Mutual coverage is primary, and must be exhausted before coverage is triggered under the USAA policy. R. Doc. 13-1 at 4. USAA also

argues that Western World's MCS-90 endorsement[2] constitutes insurance coverage which must be exhausted before triggering either of the UM Policies.[3] R. Doc. 13-1 at 5.

The parties have filed multiple motions for summary judgment and engaged in extensive discovery in the state court proceeding. *See* R. Docs. 17 at 3-4; 13-1 at 6-7. Of note is Liberty Mutual's Motion seeking summary judgment that the Plaintiffs were not covered under a Liberty Mutual UM/UMI policy because USAA validity waived UM coverage to reduce its policy premiums. R. Doc. 17 at 3. Plaintiffs filed a cross Motion seeking summary judgment that the Liberty Mutual policy did provide UM/UMI coverage to Plaintiffs. These Motions were denied, because the state court found there were outstanding issues of material fact. R. Doc. 17 at 3. Plaintiff contends that not only was Liberty Mutual's Motion denied, but both the Louisiana Fifth Circuit and the Louisiana Supreme Court denied writs. R. Doc. 13-1 at 6.

On June 22, 2016, more than two years after the initial lawsuit was filed in state court, Plaintiffs filed a Complaint in this Court, seeking a declaratory judgement to determine whether the federally-mandated MCS-90 endorsement constitutes automotive liability insurance. R. Doc. 2 at 4. If so, Plaintiffs would need to exhaust the Western World policy limits before triggering coverage under either of the UM policies issued by Liberty Mutual or USAA. Plaintiffs contend that no other federal or Louisiana state court has yet to rule on this issue. R. Doc. 2 at 4. In addition, Plaintiffs emphasize that they only seek a declaratory judgment regarding this single issue of

---

[2] Judge Beer explained the role of the MCS-90 amendment in insurance coverage disputes in *Herkes v. Doe,* "the Fifth Circuit has stated that the MCS–90 and the relevant federal regulations do not address coverage for the purpose of disputes between the insured and the insurer. However, when the protection of injured members of the public is at stake 'the insurer's obligations under the MCS–90 are triggered when the policy to which it is attached provides no coverage to the insured.' Thus, where the policy provides no coverage for the vehicle, the MCS–90 endorsement is triggered for the benefit of plaintiff." *Herkes v. Doe*, No. CIV.A. 01-0700, 2002 WL 465192, at *2 (E.D. La. Mar. 25, 2002) (quoting *T.H.E. Insurance Company v. Larson Intermodel Service, Inc.*, 242 F.3d 667, 672 (5th Cir. 2001).

[3] Plaintiff claims that Liberty Mutual is arguing the Western World policy must be exhausted before triggering UM coverage, while Liberty Mutual takes the position that the policy holder waived UM coverage in this case. R. Doc. 17 at 1.

federal law, and do not want to litigate the entire claim in federal court. R. Doc. 2. at 6. As such, Plaintiffs' Complaint seeks a declaration that "the MCS-90 endorsement represents a surety agreement and that it is not liability 'insurance.'" R. Doc. 2 at 10.

Defendant Liberty Mutual filed an Answer denying liability and averring that the Liberty Mutual policy does not provide UM coverage to Plaintiffs because USAA, the policyholder, waived UM coverage to reduce its premiums. R. Doc. 9 at 1. This is the same issue Liberty Mutual previous raised in state court. Liberty Mutual also filed a counterclaim seeking declaratory relief that (1) it owes no obligation to plaintiffs/counter-defendants under the policy because USAA waived UM coverage and (2) that Liberty Mutual handled Plaintiffs claim in accordance with Louisiana law and did not violate either La. Rev. Stat. 22:1982 or La. Rev. Stat. 22:1973, the insurance bad faith statutes. Liberty Mutual invokes jurisdiction for its counterclaims under either 28 U.S.C. § 1367(a), claiming the counterclaims form part of the same case or controversy as the Plaintiffs' claims, or diversity jurisdiction pursuant to 28 U.S.C. § 1332. R. Doc. 9 at 10-11.

Defendant USAA also filed an Answer denying liability and asserting a counterclaim in this case. R. Doc. 24. USAA contends that the Court has jurisdiction over the counterclaim under supplemental jurisdiction pursuant to 28 U.S.C. § 1367, or in the alternative, diversity jurisdiction pursuant to 28 U.S.C. § 1332. R. Doc. 24 at 2. USAA's counterclaim is essentially the inverse to the original complaint seeking a declaratory judgment in this matter. In the counterclaim, USAA argues that the coverage provided by the MCS-90 Endorsement should prime any insurance policies potentially triggered by the accident. R. Doc. 24 at 5. USAA contends that the purpose of the MCS-90 Endorsement is "to ensure that an interstate motor carrier takes financial responsibility for all drivers . . . . Requiring UM/UIM coverage to prime the MCS-90 Endorsement would defeat Congress' purpose of mandating an MCS-90 Endorsement to ensure that the financial

responsibility for a third party's injury rests with the negligent tortfeasors." R. Doc. 24 at 5. Thus, according to USAA, coverage under the USAA and Liberty Mutual Policies should only be triggered after the $750,000 limit provided in the MCS-90 Endorsement has been exhausted. USAA seeks a declaratory judgement that Western World's coverage under the MCS-90 Endorsement is primary, and any UM/UIM coverage is in excess of the endorsement. R. Doc. 24 at 5.

## II.    PRESENT MOTIONS

On August 2, 2016, Plaintiffs filed a Motion to Strike Defendant Liberty Mutual's Answer and Counterclaim. R. Doc. 13. Liberty Mutual filed an Opposition on August 23, 2016. R. Doc. 17. The Plaintiffs replied, Defendants surreplied, and Plaintiffs submitted yet another response. R. Docs. 16, 32, 35. On August 30, 2016, Plaintiffs filed a Motion to Strike Defendant USAA's Answer and Counterclaim. R. Doc. 30. Defendant USAA filed an opposition, adopting Liberty Mutual's arguments. R. Doc. 36.

### A. Plaintiffs' Motion to Strike Liberty Mutual's Answer and Counterclaim (R. Doc. 13)

In Plaintiffs' Motion to Strike they argue their complaint seeks only to determine a discrete question of federal law, while Liberty Mutual's counterclaim seeks "to complicate and delay this matter" by introducing substantive issues of Louisiana law. R. Doc. 13-1 at 1-2. Additionally, Plaintiffs aver that the questions raised in the counterclaim have already been addressed in the state court action, and while not yet resolved, should remain in state court. R. Doc. 13-1 at 2. Plaintiffs ask this Court to refuse to extend supplemental jurisdiction and strike the counterclaim under Rule 12. R. Doc. 13-1 at 2.

Plaintiffs argue that Liberty Mutual has already had an opportunity to litigate these questions in state court. R. Doc. 13-1 at 6. Specifically, they emphasize that Liberty Mutual's Motion for Summary Judgment regarding USAA's alleged waiver of UM coverage was already denied, and both the Louisiana Fifth Circuit and the Louisiana Supreme Court denied writs. R. Doc. 13-1 at 6. Plaintiff frames the counterclaim as an attempt to relitigate an argument that has already been denied in Louisiana state courts. Additionally, Plaintiffs refute Liberty Mutual's claim that diversity jurisdiction exists in this case. R. Doc. 13-1 at 8. Plaintiffs argue that this action include non-diverse defendants, as both USAA and B&R Hotshot Logistics are Louisiana citizens, thus destroying diversity. R. Doc. 13-1 at 8.

Finally, Plaintiffs argue that the Court should decline to exercise supplemental jurisdiction in this case. First, they assert that the issues in Liberty Mutual's counterclaim, namely whether USAA validly waived UM coverage and whether Liberty Mutual violated Louisiana "bad faith" statutes in handling Plaintiffs claim, are not sufficiently related to Plaintiffs' complaint for a declaratory judgment to form the same case or controversy. (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998)). Second, Plaintiffs argue that the counterclaim raises novel issues of state law and this Court should decline to exercise supplemental jurisdiction. (citing 28 U.S.C. § 1454(d)(2); id. § 1367(c)(1)–(4); *Team Express Distributing LLC v. Junction Solutions, Inc.*, No. 5:15-CV-994, 2016 WL 3081020, slip op. (W.D. Tex May 31, 2016)) R. Doc. 13-1 at 9. Therefore, Plaintiffs contend that these issues would be best resolved in the action already pending in state court.

### B.  Liberty Mutual's Opposition

Liberty Mutual timely responds.  R. Doc. 17.  Liberty Mutual makes three arguments in support of its counterclaim: (1) an entire pleading cannot be struck under Rule 12, and the

counterclaim is not within the category of pleadings that can be struck under Rule 12(f); (2) the Court has diversity and supplemental jurisdiction under 28 U.S.C. §1332 and 28 U.S.C. §1367, respectively; and (3) because the UM coverage issue has not yet been resolved in state court, granting a declaratory judgment on the matter would save the parties additional time and expense.

Liberty begins by reviewing the path the UM issue has already taken in the state courts. First, they explain that Plaintiffs filed a motion for summary judgment in February 2015, alleging that they did in fact have UM coverage under the Liberty Mutual policy. R. Doc. 17 at 3. Liberty filed a cross motion, arguing the policyholder had validly waived UM coverage. R. Doc. 17 at 3. The state court denied both motions. Liberty asserts that "[n]o party ever has sought appellate review of this Judgment, which is an interlocutory ruling and not a final judgment under Louisiana law." (citing *Williams v. City of New Orleans*, 2015-0769 (La. App. 4 Cir. 4/20/16), 193 So. 3d 259, 264 ("'[T]he denial of an initial motion for summary judgment is an interlocutory judgment, and therefore, not a final judgment.'") (quoting *Hargett v. Progressive Ins. Co.*, 08-0293 (La. App. 4 Cir. 10/29/08), 996 So. 2d 1199, 1202). Liberty contends that this unresolved issue has led to "discovery and motion practice for the past fourteen months." R. Doc. 17 at 4.

Liberty then addresses Plaintiffs' arguments. First, Liberty avers that Rule 12 is not the proper, nor preferred, procedural mechanism for dismissing a claim. (citing *Rowe v. Hornblower Fleet,* No. C-11-4979, 2012 WL 5833541, at *6 (N.D. Cal. 2012) "[M]otions to strike are generally disfavored . . . A Rule 12(f) motion is not a proper method to procure dismissal of all or part of a complaint or counterclaim;" 5C Fed. Prac & Proc. Civ. § 1380 (3d ed. 2016) "[Rule 12 (f)] is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint, or a counterclaim.") Instead, Liberty Mutual argues that if Plaintiffs wish to attack subject matter jurisdiction, they must do so through a motion to dismiss under Rule 12(b)(1).

Second, Liberty argues that this Court has subject matter jurisdiction over the counterclaim. Addressing Plaintiffs' arguments that there is a lack of complete diversity in this case, Liberty contends that the only parties to its counterclaim are Plaintiffs, Louisiana citizens, and Liberty Mutual, a citizen of Wisconsin and Massachusetts. R. Doc. 17 at 5-6. Thus, Liberty contends there is complete diversity in this case. The parties did not dispute that the jurisdictional amount is met.

As to supplemental jurisdiction, Liberty contends "a loose factual connection" is generally sufficient to satisfy the requirement that the claims arise from a common nucleus of operative fact. (quoting *Hankins v. Yellow Fin Marine Servs., LLC*, No. 15-2494, 2015 WL 9004447, at *3 (E.D. La. 2015). Furthermore, Liberty asserts that the counterclaim arises from the same transaction or occurrence—the underlying car accident—and is thus a compulsory counterclaim.

Finally, Liberty argues that none of the factors allowing the Court to decline jurisdiction under § 1367 (c) are present here. According to Liberty, the counterclaim does not raise any novel or complex issues of state law, as Louisiana and Texas law regarding UM coverage is well-settled. R. Doc. 17 at 9-10. Further, Liberty argues the counterclaim does not "predominate" over Plaintiff's claims. Thus, they contend "there are no compelling reasons to decline jurisdiction." R. Doc. 17 at 10.

### C.  Plaintiffs' Reply (R. Doc. 26)

Plaintiffs filed a Reply to Liberty's Motion, R. Doc. 26, which reiterates Plaintiffs' argument that the original complaint does not seek a decision regarding the ranking of the policies potentially implicated in this matter, but merely to "clarify a pure issue of federal law." R. Doc. 26 at 2, 5. Plaintiffs argue they only seek a declaration whether a MCS-90 endorsement constitutes insurance or suretyship. R. Doc. 26 at 2. Plaintiffs contend Liberty Mutual filed its counterclaim

to complicate and delay this case, rather than merely addressing the correct interpretation of the MCS-90 endorsement.

Addressing the arguments Liberty makes in its opposition, Plaintiffs argue they are not using the federal forum to resolve a state law insurance coverage issue, and dispute Liberty's allegation that the motion to strike is procedurally defective. However, Plaintiffs do not directly address the alleged procedural deficiencies in their original Motion to Strike, but instead argue there are other reasons that Liberty's counterclaim should be dismissed. R. Doc. 26 at 5. Plaintiffs then proceed to discuss legal doctrines regarding whether abstention is appropriate in this case.

First, Plaintiffs argue that in a suit for declaratory relief, the *Wilton/Brillhart* Standard provides the district court with "discretion to entertain or to stay an 'action for declaratory relief where parallel proceedings . . . were underway in state court.' " R. Doc. 26 at 6 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Plaintiffs aver that the Fifth Circuit has developed a seven-factor test to determine whether to retain jurisdiction over declaratory judgments. R. Doc. 26 at 6. (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994)). According to Plaintiffs, these factors demonstrate the Court should exercise jurisdiction over the Plaintiffs' claim for declaratory relief. R. Doc. 26 at 7.

However, Plaintiffs contend that because the Defendant's counterclaim seeks monetary or other coercive relief, the *Colorado River* abstention doctrine applies to the counterclaim. R. Doc. 26 at 8; (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Under *Colorado River*, a federal court should abstain when there are parallel proceedings in state and federal court. R. Doc. 26 at 8. Plaintiffs argue that because the issues in Defendant's counterclaim are already pending in state court, the Court should decline to exercise jurisdiction pursuant to *Colorado River*. R. Doc. 26 at 11.

Finally, Plaintiffs argue that the *Rooker-Feldman* abstention doctrine prevents federal district courts from hearing collateral attacks on state court judgments. R. Doc. 26 at 12 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). Plaintiffs contend that Liberty Mutual's counterclaim seeks to relitigate issues that were already decided in state court, and thus this Court is precluded from hearing the case under *Rooker-Feldman*. R. Doc. 26 at 12. Further, Plaintiffs aver that the *Rooker-Feldman* provides a basis for challenging the Court's subject matter jurisdiction. R. Doc. 26 at 12.

### D.  Liberty Mutual's Surreply (R. Doc. 32)

Defendant Liberty Mutual argues that Plaintiffs improperly raised new arguments in their reply, which the Court should not consider. R. Doc. 32 at 1. Additionally, Liberty objects to the additional relief Plaintiffs request in their reply; initially, Plaintiffs sought to strike the counterclaim, but in their latest filing have requested administrative dismissal. R. Doc. 32 at 1. Further, Liberty contends that Plaintiffs should not be able to use abstention doctrines to bar the Defendant's counterclaim after they filed this suit in federal court. R. Doc. 32 at 1.

Addressing Plaintiffs' abstention arguments, Liberty argues that Plaintiffs should not be allowed to bring part of their case into federal court while simultaneously preventing Liberty from exercising that same right. R. Doc. 32 at 2. Further, Liberty contends that federal courts have an obligation to exercise jurisdiction over claims filed in federal court even if there are similar matters pending in state court. R. Doc. 32 at 3. While Liberty Mutual agrees that the *Brillhart* standard applies to cases seeking declaratory relief, they disagree with Plaintiffs' characterization of the counterclaims in this matter. R. Doc. 32 at 3. Liberty argues that its counterclaim *only* seeks declaratory relief, and therefore any possible abstention regarding its counterclaim is also governed

by *Brillhart*, not *Colorado River*. Finally, Liberty argues that the *Brillhart* standards "weigh heavily" in favor of exercising jurisdiction over Liberty Mutual's counterclaim. R. Doc. 32 at 4.

### E.  Plaintiffs' Response (R. Doc. 35)

Plaintiffs argue that their reply did not seek any additional relief that was not already requested in the motion to strike. R. Doc. 35 at 2. Further, they restate their position that the issues in Liberty Mutual's counterclaim are not part of the same case or controversy as the declaratory judgement, and thus supplemental jurisdiction does not exist. R. Doc. 35 at 3. Finally, Plaintiffs argue that the correct application of the *Brillhart* standards demonstrates that the Court should not exercise jurisdiction over the Defendants' counterclaims. R. Doc. 35 at 4.

### F.  Plaintiffs' Motion to Dismiss USAA's Answer and Counterclaim (R. Doc. 30-1)

After USAA filed its Answer and Crossclaim, seeking a declaration that coverage under the MCS-90 Endorsement is primary to any UM/UIM policies, Plaintiffs filed a Motion to Strike, Abstain, or Dismiss. R. Doc. 30-1. Plaintffs begin by reviewing the factual and procedural background of this case, and note that the case has been pending in state court for 27 months. R. Doc. 30-1 at 1. Plaintiffs argue that "numerous federal cases" have determined that an MCS-90 Endorsement is a surety obligation rather than insurance, and this determination is governed by federal law. R. Doc. 30-1 at 4.

Next Plaintiffs admit that USAA's allegation that B&R is liable for the driver's negligence, because his is an employee under federal law, raises an additional question of federal law. R. Doc. 30-1 at 5. However, Plaintiffs aver that this is an insufficient basis to extend jurisdiction over all the state law claims asserted in the counterclaim, as these issues are already being litigated in state court. R. Doc. 30-1 at 6. Plaintiffs object to USAA's request seeking a ruling regarding the ranking

of the insurance policies and the MCS-90 endorsement, and argue that their original complaint does not seek a ranking of the policies, but only a declaration of whether a MCS-90 endorsement constitutes liability insurance. R. Doc. 30-1 at 6.

Plaintiffs then review the timeline of the filings in this Court, along with the filings in the related state court proceeding. R. Doc. 30-1 at 7-9. According to Plaintiffs, this history reveals that the Defendants are seeking to delay and complicate this matter, and thus, the Court should only issue a decision on the classification of the MCS-90 Endorsement, while deferring all other matters to the state court proceeding. R. Doc. 30-1 at 10. Finally, Plaintiffs argue that under *Colorado River* and the *Rooker-Feldman* doctrine, this Court should abstain from addressing any of the issues USAA raises in its counterclaim. R. Doc. 30-1 at 12.

### G.  USAA's Opposition (R. Doc. 36)

In its Opposition to Plaintiff's Motion to Strike, Dismiss, or Abstain, Defendant USAA adopts Liberty Mutual's positions and arguments. R. Doc. 36 at 1. For these reasons, Defendant USAA argues the Court should deny Plaintiffs' Motion, and exercise jurisdiction over USAA's counterclaim. R. Doc. 36 at 1.

### III.    LAW AND ANALYSIS

Plaintiffs' complaint in this matter sought a declaratory judgment. Likewise, Defendants Liberty Mutual and USAA filed counterclaims seeking declaratory judgments in this matter. All of these claims are pursuant to The Declaratory Judgment Act, a procedural mechanism designed to provide parties a new remedy in federal court. However, the Act does not confer jurisdiction. *Days Inns of America, Inc. v. Reno*, 935 F.Supp. 874, 877 (W.D. Tex. 1996). A court need not provide a party with declaratory judgment relief on request "as this is a matter left to the district court's sound discretion." *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 4 F.3d 401, 404 (5th

Cir.), *reh'g denied*, 9 F.3d 105 (5th Cir. 1993), *cert. denied*, 511 U.S. 1004 (1994). The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration . . . ." 28 U.S.C. § 2201(a). Since its inception, the Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995). In exercising its discretion, a district court is authorized to stay or to dismiss an action seeking declaratory judgment. *Id.* When the basis for declining to proceed is the pendency of a state court proceeding, as is the case here, a stay is often the preferable course. *Id.* at 288 n.2.

Although the district court's discretion is broad, it is not unfettered. Courts may not dismiss requests "for declaratory judgment relief on the basis of whim or personal disinclination." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989) (quoting *Hollis v. Itawamba County Loans*, 657 F.2d 746, 750 (5th Cir. 1981)). The Fifth Circuit has set out several factors which the district court must consider when deciding whether to hear a declaratory judgment action, which include, but are not limited to: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same

parties and entered by the court before whom the parallel state suit between the same parties is pending. *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir.1994).

In *Wilton v. Seven Falls Co.*, the Supreme Court simplified the above test by stating that whether the district court should exercise its discretion comes down to considerations of practicality and wise judicial administration. *Wilton*, 515 U.S. at 288. In *Wilton*, the Supreme Court affirmed a Fifth Circuit decision upholding a district court's ruling to stay a declaratory judgment action pending the resolution of a later-filed state court suit. *Id*. The *Wilton* court found that the issuance of such a stay was not an abuse of the trial court's discretion. *Id*.

After a review of the law and facts surrounding this case, this Court, in the exercise of its discretion, finds that this declaratory judgment action should be stayed pending the resolution of the state court matter. The Court will address each of the *Trejo* factors in turn.

### 1. The pending state action

First, the pending state court action can fully resolve all of the issues between the parties in this litigation. As Plaintiffs emphasize, that case has been pending for more than two years, and the parties have engaged in extensive discovery and motion practice. Additionally, the Court has been advised that the state court recently took this very same issue—whether the MCS-90 Endorsement constitutes insurance or suretyship—under consideration. As Plaintiffs point out in their motion, multiple federal courts have addressed the nature of the MCS-90 Endorsement, providing substantial guidance to the state court on this issue. As such, the state court has

precedence in both the time the suit was filed, and the extent of involvement it has in resolving these claims.

### 2.   Did Plaintiff file suit in anticipation of a lawsuit by the Defendant?

The second factor weighs weighs against abstention. Plaintiff filed this suit for a declaratory judgment in order to expedite, rather than avoid the state proceedings. Nonetheless, this factor is not dispositive.

### 3.   Forum shopping

Plaintiff filed this motion in an attempt to accelerate a decision in state court. This same issue was recently taken under consideration in the state court proceeding. Because the state court is fully capable of determining the questions at issue here, the Court can see no reason why federal court is a more convenient forum. Thus, to the extent Plaintiff filed this action to reach a faster result, the Court finds that Plaintiff engaged in forum shopping. This factor weighs in favor of abstention.

### 4.   Possible inequities that would exist in changing forums

The parties repeatedly mention the vast discovery and motion practice that has already taken place in federal court. Plaintiffs argue that this supports their position that the Court should *only* resolve the questions presented in their complaint, while denying the Defendants access to the federal forum. This outcome would certainly be inequitable. However, forcing the parties to

refile and relitigate all the issues raised in the complaint and crossclaims would only further delay this matter. As such, the Court finds that the fourth factor weighs in favor of abstention.

### 5.  Convenience of federal court

The Court finds this factor is neutral, due to the geographic proximity of this Court and the state court in Jefferson Parish.

### 6.  Judicial economy

The Court finds that retaining this lawsuit in federal court would frustrate—rather than serve—the purposes of judicial economy. One only needs to review the filings in this Court to appreciate the extent and depth of the litigation currently pending in state court. The overwhelming evidence demonstrates that considerations of practicality and wise judicial administration are best served by allowing this case to continue in state court—without this Court issuing rulings on the declaratory judgments requested in Plaintiffs' original complaint or Defendants' counterclaims. Thus, these question should remain in state court and be resolved alongside the entirely of the state court action.[4]

### 7.  Does the federal suit seek to construe a state judicial decree?

While none of the questions raised in the complaint or crossclaims have been completely resolved by the state court, many of the issues have already been addressed via motions for summary judgment. Further, the parties have filed motions in state court addressing these same issues. As such, federalism and comity concerns dictate that the seventh factor weighs in favor of abstention.

The Court finds that the first, third, fourth, sixth, and seventh favors weigh in favor of abstention. The fifth factor is neutral. Only the second factor weighs against abstention in this case.

---

[4] While the parties raise myriad arguments in support of their respective positions, the Court finds that because abstention is proper, it is not necessary to address those arguments at this time.

For the foregoing reasons, the Court decides to exercise its discretion to abstain from ruling in this declaratory judgment action.

Furthermore, the United States Supreme Court explained that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *See Wilton,* 515 U.S. at 288 n.2. Thus the Court finds that staying this action will avoid duplicative litigation while allowing the parties to reopen the case without the risk of a time bar if, for any reason, the state court case fails to resolve the matter in controversy.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motions to Strike Defendants' Answers and Counterclaims, R. Docs. 13, 30, are **DENIED**. Further, the above captioned matter is **STAYED** and Administratively Closed, pending the resolution of the state court matter entitled *Dotty Fortenberry wife of/and Alvin L. Fortenberry vs. Scottsdale Insurance Company, Liberty Mutual Insurance Company, JYD Trucking LLC., David Lyle Scott, Sr., and United Services Automobile Association*, bearing civil docket number 738-827, now pending in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

New Orleans, Louisiana, this 13th day of October, 2016.

UNITED STATES DISTRICT JUDGE